Filed 8/3/26

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SILVIA MORALES,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF<br>SAN DIEGO COUNTY,<br><br>    Respondent;<br><br>SAN DIEGO GAS & ELECTRIC<br>COMPANY,<br><br>    Real Party in Interest. | D087448<br><br><br>(San Diego County<br>Super. Ct. No. 25CU004859C) |

ORIGINAL PROCEEDINGS in mandate following an order granting a motion to compel arbitration. Carolyn M. Caietti, Judge. Petition granted.

Lavi & Ebrahimian, N. Nick Ebrahimian, Jordan D. Bello and Brett Szmanda for Petitioner.

No response for Respondent.

Wilson Turner Kosmo, Carolina Bravo-Karimi and Meghan Crumm, for Real Party in Interest.

After employing plaintiff Sylvia Morales for nearly 20 years, defendant San Diego Gas & Electric Co. (SDG&E) terminated her employment. Morales filed a wrongful termination lawsuit, relying on provisions of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) and the California Family Rights Act (CFRA) (Gov. Code, § 12945.2). She variously asserted that SDG&E discriminated against her based on a disability, failed to provide reasonable accommodations, failed to engage in a required interactive process, and retaliated against her for exercising her rights. Her statutory claims served as the basis for her contention that she had been terminated in violation of public policy within the meaning of *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, giving rise to a common law claim for wrongful termination.

Relying on arbitration provisions in two documents signed by Morales when she was hired in September 2005, SDG&E brought a successful motion to compel arbitration of her claims. Morales challenges that ruling, contending that the express terms of the arbitration provisions indicate she did not agree to arbitrate her claim for wrongful termination in violation of statutory guarantees and public policy. We agree. In contrast to other broadly worded arbitration agreements that apply to any dispute "related to" or "in connection with" the plaintiff's *employment*, the provision in this case was limited to disagreements concerning the employment *agreement*. The parties only agreed to arbitrate disputes regarding "any aspect of" the agreement or "any act which allegedly has or would violate" the agreement.

In this case, Morales did not base her claim on any alleged violation of her employment agreement by SDG&E. Nor did she seek to resolve a dispute regarding any aspect of that agreement. Indeed, she took no issue with language in the agreement characterizing her employment as an "at-

2

will" relationship that SDG&E could generally terminate at any time. Rather, she relied on unwaivable statutory protections and a common law *Tameny* claim that constitutes a "narrow exception" to the general rule that an employer can discharge an at-will employee for any reason. (See *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 71 (*Green*).) In other words, because Morales's wrongful termination claim is not based on the parties' employment agreement, the arbitration provision by its terms simply does not apply. Accordingly, we issue a writ of mandate directing the trial court to deny SDG&E's motion to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     *Morales's Hiring and Firing*

Morales was hired in September 2005 as a Human Resources (HR) Coordinator in the staffing department of SDG&E's HR Division. She was provided with an offer letter "and told that new hire paperwork would come later." Her offer letter advised that her employment was "at-will, which may be terminated at the option of either you or the Company for any reason at any time." The letter also explained that "[a]ny dispute regarding any aspect of this letter of agreement or any action that allegedly violates any provision of this agreement, including any action with respect to termination of employment (an "arbitrable dispute"), will be submitted to arbitration … ." Morales formally accepted the offer a few days later. Her acceptance confirmed her understanding that "any dispute regarding any aspect of this letter of agreement or any action that allegedly violates any provision of this agreement" would be subject to arbitration.

A little more than a week later, Morales was given a "stack of documents that [she] was required to sign" as a condition of her employment.

3

There was no opportunity to negotiate any terms or opt out of any provisions. Included was a nine-page Employment, Confidential Information, and Invention Assignment Agreement (Agreement). Like her offer and acceptance letters, this Agreement characterized her employment as "at-will" and provided for arbitration of "[a]ny dispute regarding any aspect of this Agreement or any act which allegedly has or would violate any provision of this Agreement." Morales signed and returned the Agreement. The Agreement stated that it constituted "the entire Agreement and understanding between the Company and me relating to the subject matter herein and merges all prior discussions between us."

Fast forward 19 years, Morales was informed that SDG&E's leadership had allegedly "los[t] … confidence in her ability and willingness to work towards positive and productive working relationships due to her behavior, including her resistance to feedback, lack of accountability, refusal to perform certain functions of her positions, and unwillingness to cooperate and collaborate with leadership." She was terminated immediately, effective September 25, 2024. In response, she filed this lawsuit alleging various violations of FEHA and CFRA as a basis for her claim that she had been terminated in violation of public policy.

**B.** ***SDG&E's Motion to Compel Arbitration***

Morales's complaint was filed in January 2025. Less than three months later, SDG&E filed a motion to compel arbitration arguing that the parties had agreed to arbitrate "all employment-related disputes arising out of [Morales's] employment." Morales disagreed, asserting among other things that because her claims were "not regarding any aspect of the Agreement or

4

any act which allegedly has or would violate any provision of the Agreement," they were not subject to arbitration.

The superior court granted SDG&E's motion. Acknowledging that the Agreement was a contract of adhesion and that SDG&E was required to show that "the dispute [wa]s covered by the arbitration agreement," the court ruled that the parties' Agreement "covers all claims arising out of [Morales's] employment." It believed that Morales's claims of wrongful termination and retaliation based on disability constituted a "dispute regarding [an] aspect of this Agreement or [an] act which allegedly has or would violate any provision of this Agreement." In the court's view, because the Agreement characterized Morales's employment relationship as "at-will," any claim based on recognized exceptions to an at-will relationship was a "dispute regarding [an] aspect of [the] Agreement" and thus subject to arbitration.

In response to Morales's petition for writ of mandate, we issued an order to show cause.

## DISCUSSION

In *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 100 (*Armendariz*), the Supreme Court held that an employer could not, as a condition of employment, require employees to waive their rights to the protections of FEHA. Three years later, in *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1077 (*Little*), the court employed similar reasoning to conclude that an employee's right to bring a *Tameny* claim for wrongful termination in violation of public policy was similarly unwaivable. Both decisions recognized that FEHA claims and *Tameny* claims are entirely independent of the employment agreement, and both relied on the principle that a law designed to protect a public interest " 'cannot be contravened by a private agreement.' " (*Armendariz*, at p. 100; *Little*, at p. 1077.) And in

5

each case, the court went on to hold that an employment agreement could mandate arbitration of an employee's FEHA and *Tameny* claims, but only if it did not "undermine the vindication of unwaivable rights." (*Little*, at p. 1079; accord *Armendariz*, at p. 90 [FEHA claims are arbitrable "*if* the arbitration permits an employee to vindicate his or her statutory rights"].)

In both *Armendariz* and *Little*, the employment agreements clearly required that any FEHA or *Tameny* claims be arbitrated.[1] Although the context is similar, the question presented by this case is a precursor to the issue addressed in *Armendariz* and *Little*. Here, we must first decide *whether* the parties agreed to arbitrate Morales's claim that she was terminated from her position at SDG&E in violation of unwaivable statutory protections under FEHA and CFRA, as well as the broader principles of public policy that underlie *Tameny*. To resolve this question, we apply the ordinary rules of

---

[1] In *Armendariz,* the employee agreed that "as a condition of my employment, that in the event my employment is terminated, and I contend that such termination was wrongful or otherwise in violation of the conditions of employment or was in violation of any express or implied condition, term or covenant of employment, whether founded in fact or in law, including but not limited to the covenant of good faith and fair dealing, or otherwise in violation of any of my rights, I and Employer agree to submit any such matter to binding arbitration … ." (*Armendariz, supra,* 24 Cal.4th at p. 92.) In *Little,* the employee was required to stipulate that "any claim, dispute, or controversy (including, but not limited to, any and all claims of discrimination and harassment) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company … arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with, the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, shall be submitted to and determined exclusively by binding arbitration … ." (*Little, supra,* 29 Cal.4th at p. 1069.)

6

contract interpretation to the language of the arbitration provision in the relevant agreement. (See *In re Tobacco Cases I* (2004) 124 Cal.App.4th 1095, 1104.) Where there is no conflict in the foundational extrinsic evidence, our review is de novo. (*Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 687; *CPI Builders, Inc. v. Impco Technologies, Inc.* (2001) 94 Cal.App.4th 1167, 1172.)

## A.   *The operative language is found in the September 12, 2005[2] Agreement.*

The parties agree that the language of the arbitration agreement defines the scope of the controversies subject to arbitration, but they disagree on which language we should consider. Relying on the integration or merger clause, Morales contends that by its terms, the formal employment Agreement she signed on September 12, nine days after she accepted employment, supersedes the language of the offer and acceptance with respect to arbitration. SDG&E maintains that the later Agreement should merely be "construed together" with the earlier documents.

Morales has the better argument. The crucial question is whether the parties intended the September 12 Agreement to "serve as the exclusive embodiment" of their understanding so as to " 'nullify antecedent understandings and agreements' " with respect to the types of disputes they were agreeing to arbitrate. (*Masterson v. Sine* (1968) 68 Cal.2d 222, 225–226.) Here, the Agreement contains an express "integration" or "merger" clause specifying that it represents "the entire Agreement and understanding between the Company and me relating to the subject matter herein and merges all prior discussions between us." Because the merger language

---

[2]     Undesignated date references are to 2005.

7

limits itself to "the subject matter herein," this is best termed a "partial integration" where the parties intended the written agreement to serve as their final expression on the topics that it addressed, but not on any that were omitted. (*Wagner v. Glendale Adventist Medical Center* (1989) 216 Cal.App.3d 1379, 1385; see *ibid.* ["parties may intend that a writing finally and completely express certain terms of their agreement rather than the agreement in its entirety"].) Thus, it made no difference that the Agreement did not discuss *other* terms such as compensation, benefits, or a background check. (See *Haggard v. Kimberly Quality Care, Inc.* (1995) 39 Cal.App.4th 508, 520 [Employment and Confidentiality Agreement was final expression with respect to particular terms notwithstanding that it did not discuss salary and benefits].) The critical fact is that it *did* discuss the kinds of disputes that the parties agreed to arbitrate. (See *Grey v. American Management Services* (2012) 204 Cal.App.4th 803, 807 [integration clause in employment agreement means that arbitration provision in that agreement supersedes prior arbitration agreement contained in employment application packet].)

## B.     *The September 12 Agreement does not compel arbitration of Morales's FEHA, CFRA, and Tameny claims.*

Our review thus begins with the language of the September 12 Agreement. In it, Morales and SDG&E agreed to arbitrate "[a]ny dispute regarding any aspect of this Agreement or any act which allegedly has or would violate any provision of this Agreement." Reported California case law contains a range of decisions addressing similar interpretational issues, each of which considers an arbitration provision with slightly different language. These cases often frame the question as whether the language of the arbitration clause in the employment agreement is sufficiently "broad"

8

to cover the claims being asserted by the employee.  (See generally *Bono v. David* (2007) 147 Cal.App.4th 1055, 1067 (*Bono*); *Rice v. Downs* (2016) 248 Cal.App.4th 175, 186 (*Rice*).)  Broad language supports granting a motion to compel arbitration, whereas narrower wording often results in the denial of the motion.[3]

At one end of the spectrum is language leaving no room for doubt that all employment-related claims, regardless of their nature, are subject to arbitration.  These provisions generally reference the relationship or connection of the dispute or claim to plaintiff's *employment*.  (See, e.g., *Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 245 (*Sandquist*) [" 'any claim, dispute and/or controversy ... arising from, related to, or having any relationship or connection whatsoever with ... my employment by ... the Company, whether based on tort, contract, statutory, or equitable law, or otherwise' "]; see also *Little, supra,* 29 Cal.4th at p. 1069; *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1273.)  At the other end—and considerably more problematic for the employer—are provisions that limit arbitration to disputes involving or interpreting the parties' "agreement."  (See, e.g., *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1052 [Clauses providing for arbitration of disputes " ' 'arising from" ' " or " ' "arising out of" ' " an agreement have generally been interpreted to apply

---

[3]    We recognize this is not a binary inquiry because "broad" and "narrow" are relative terms.  Even a relatively broad provision may not apply to the dispute in question, just as a relatively narrow term may still cover the particular claim that the plaintiff is asserting.  The question in each particular instance is whether the specific terms of the arbitration provision "reasonably cover the dispute as to which arbitration is requested." (*Bono, supra*, 147 Cal.App.4th at p. 1063; see also Civ. Code, § 1648 ["However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract"].)

only to disputes regarding the interpretation and performance of the agreement].) As this court explained in *Cobler v. Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518, a provision that requires arbitration of disputes " 'arising from this Agreement' " is more limited than one where the parties agree to arbitrate any controversy " 'arising out of *or relating to* this agreement.' " (*Id.* at p. 530; see also *Rice, supra*, 248 Cal.App.4th at p. 186 [arbitration clause is more narrow if it omits expansive language " 'relating to' " or " 'in connection with' " the agreement]; *Mansdorf v. California Physicians' Service, Inc.* (1978) 87 Cal.App.3d 412 (*Mansdorf*) [characterizing as "more limited" a clause that only mandated arbitration for "disputes with respect to any of the terms, conditions or benefits of this agreement" (*id.* at p. 417; see *id.* at p. 414)].)

Here, the arbitration provision in the Agreement does not specify that the parties will arbitrate all claims connected to the plaintiff's *employment*. It does not even compel arbitration of every controversy arising out of or related to the employment Agreement. Instead, it identifies two specific types or categories of disputes that the parties are agreeing to arbitrate: (1) disputes "regarding any aspect of [the] Agreement"; and (2) disputes regarding "any act which allegedly would violate" the Agreement.

According to SDG&E, the arbitration clause in the Agreement means that Morales agreed to "arbitrate any claims she might have regarding her employment." But that is plainly not what the arbitration provision says. Indeed, had that been the parties' mutual intent, it would have been a simple matter to include substantially similar language focusing on Morales's *employment* as the triggering condition. (See, e.g., *Fuentes v. Empire Nissan, Inc.* (2026) 19 Cal.5th 93, 100 [employment agreement mandated arbitration of " 'all disputes which may arise out of the employment context' "];

10

*Toothman v. Redwood Toxicology Laboratory, Inc.* (2026) 120 Cal.App.5th 412, 416 [parties agreed to arbitrate " 'any dispute arising out of or related to [plaintiff's] employment with, or termination of employment from, [the] Company' "].)  Instead, the disputes that the parties consented to arbitrate are specifically those tied to the *Agreement*—either disputes about an *aspect* (i.e., term) of the Agreement or ones concerning an alleged *violation* of the Agreement.

Morales's lawsuit is neither.  Her claims under FEHA and CFRA, as well as her *Tameny* claim that she was terminated in violation of public policy, do not concern "any aspect" of the Agreement.  They do not depend in any way on interpreting any of the Agreement's terms or conditions.  (See *Mansdorf, supra*, 87 Cal.App.3d at p. 417.)  Nor do they involve any alleged "violation" of the Agreement by either party.  (See *Tracy Educators Assn. v. Superior Court* (2002) 96 Cal.App.4th 530, 538.)  Morales concedes the Agreement specifies she was an at-will employee subject to termination at the discretion of SDG&E.  Rather than referencing any terms of the Agreement, Morales relies on certain exceptions to at-will employment created by California law.  Although acknowledging that at-will employees may generally be fired for any reason or no reason, the exceptions rely on certain basic principles of California statutory law and public policy that limit an employer's ability to discharge an employee.  These limitations have nothing to do with, and exist independent of, the employment contract between the parties.  They are a function of "fundamental policies that are delineated in constitutional or statutory provisions" (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1095), and they give rise to damages in tort rather than contract.  (*Green, supra*, 19 Cal.4th at p. 71.)

11

Moreover, even if the arbitration provision in the Agreement could be viewed as potentially ambiguous as to its scope, this does not assist SDG&E. Although California law recognizes a general presumption in favor of arbitration (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971), there is no policy to compel the arbitration of controversies that the parties did not agree to arbitrate (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744). And "where, as here, the written agreement has been prepared entirely by the employer, it is a 'well established rule of construction' that any ambiguities must be construed against the drafting employer and in favor of the nondrafting employee." (*Sandquist, supra*, 1 Cal.5th at p. 248.) A legally unsophisticated newly hired employee, presented with a "stack of documents" she was required to sign as a condition of her employment, could not be expected to anticipate that a provision calling for the arbitration of disputes concerning an "aspect" of the Agreement or acts that "violate" it would extend to claims for wrongful termination based on California statutory rights and fundamental public policy that are entirely independent of the parties' employment agreement.

We accordingly conclude that the Agreement does not compel arbitration of Morales's FEHA, CFRA, and *Tameny* claims.[4]

---

[4] In light of our conclusion, we find it unnecessary to address Morales's additional arguments as to why the arbitration provision is unenforceable.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its order granting SDG&E's motion to compel arbitration and to enter a new order denying the motion.  Morales shall recover costs.


DATO, Acting P. J.

WE CONCUR:


BUCHANAN, J.


RUBIN, J.